UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


PARAGON MARKETING GROUP, L.L.C.,

        Plaintiff,

                                   CASE NO. 03-CV-70202-DT
                                   JUDGE JOHN CORBETT O'MEARA
        v.                        MAGISTRATE JUDGE PAUL KOMIVES

NADAIR,

        Defendant.

_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SANCTIONS
### (Doc. Ent. 53)

**I.    OPINION**

**A.    This action has been dismissed as to defendant Desjardins, and Judge O'Meara has entered an order setting aside the default judgment entered against defendant Nadair.**

On January 16, 2003, plaintiff Paragon Marketing Group, L.L.C. (Paragon) filed a

complaint against defendants Nadair and Bob Desjardins alleging (I) breach of contract for

failure to pay commissions; (II) violation of Mich. Comp. Laws § 600.2961 - the Michigan Sales

Representative Commission Act; and (III) fraud and misrepresentation as to defendant

Desjardins.

On February 27, 2003, plaintiff requested that the Clerk enter default as to defendant

Nadair.  On February 28, 2003, the Clerk of the Court entered default as to defendant Nadair.

On June 17, 2003, plaintiff filed a motion for default judgment as to both defendants.  (Doc. Ent.

8).  On June 19, 2003, Judge O'Meara entered default judgment against defendants in the

amount of $ 88,676.40.  On April 6, 2004, defendant Desjardins filed a motion to set aside

default judgment.  (Doc. Ent. 10).  Judge O'Meara granted that motion on August 10, 2004.

On August 25, 2004, defendant Desjardins filed a motion to dismiss (Doc. Ent. 16); however, he withdrew that motion on December 3, 2004.  On December 9, 2004, Judge O'Meara entered an order of dismissal with prejudice providing that the action was dismissed with prejudice and without costs only as to defendant Desjardins.

On September 14, 2005, defendant Nadair filed a motion to set aside default judgment. (Doc. Ent. 23).  On October 19, 2005, Judge O'Meara entered an order granting defendant Nadair's motion.  (Doc. Ent. 27).  On February 7, 2006, defendant Nadair filed an answer to the complaint. (Doc. Ent. 31).

**B.     Magistrate Judge Capel denied defendant Nadair's September 7, 2006 Motion for Leave to Amend.**

On September 7, 2006, defendant Nadair filed a motion for leave to file a counter and third party complaint alleging (I) interference with business relationships/contracts; (II) fraudulent / negligent misrepresentation and (III) defamation.  (Doc. Ent. 46).  Judge O'Meara referred this motion to Magistrate Judge Capel for hearing and determination.  (Doc. Ent. 47).

On September 21, 2006, plaintiff filed a response in which it argued that defendant's request was unduly delayed and that defendant's claims lacked legal merit and that granting leave would be futile.  (Doc. Ent. 48).

On October 10, 2006, defendant Nadair filed a reply.  (Doc. Ent. 52).  Magistrate Judge Capel held a motion hearing on October 16, 2006.  On October 19, 2006, Magistrate Judge Capel entered an order denying defendant's motion for the reasons stated on the record.[1]  (Doc. Ent.

---

[1]This record has not been transcribed or otherwise made available.  Nor was any objection filed to the order pursuant to 28 U.S.C. § 636 and Fed. R. Civ. P. 72.

2

54).

**C.     Judge O'Meara denied defendant Nadair's September 29, 2006 Motion for Summary Judgment.**

On September 29, 2006, defendant Nadair filed a motion for summary judgment in which it argued that (a) "there is no question of fact that Paragon and Nadair never entered into a contractual agreement and, therefore, Count I of Paragon's complaint - breach of contract - must be dismissed"; (b) "the verbal agreement between Paragon and Nadair, that Nadair agreed to pay Paragon's commissions if PCS [Pacific Coast Sales] failed to do so, is barred by the statute of frauds"; (c) "there is no question of fact that the provisions of the Michigan Sales Representatives' Commissions Act do not apply to the relationship between Nadair and Paragon" and (d) "PCS [Pacific Coast Sales] was not an agent for purposes of imposing liability directly against Nadair".  (Doc. Ent. 51).[2]  On November 30, 2006, Judge O'Meara entered an opinion and order denying the motion.  (Doc. Ent. 63).

The final pretrial conference is set for February 21, 2007, and the trial is scheduled for March 6, 2007.  (Doc. Ent. 64).

**D.     Currently pending before the Court is plaintiff's October 10, 2006 Motion for Fed. R. Civ. P. 11 and 28 U.S.C. § 1927 Sanctions.**

On October 9, 2006, plaintiff's counsel sent defense counsel an e-mail regarding the merits of defendant's motion for leave to file a counter and third party complaint, requesting that defendant withdraw the motion, and stating that plaintiff would file a motion for sanctions if defendant's motion was not withdrawn.  Doc. Ent. 60-1 at 5.  On October 10, 2006, defense

---

[2]On October 20, 2006, plaintiff filed a response.  (Doc. Ent. 55).  On October 27, 2006, defendant Nadair filed a reply.  (Doc. Ent. 59).  On November 9, 2006, Judge O'Meara held a hearing on the dispositive motion, after which he took the motion under advisement.

3

counsel sent plaintiff's counsel a responding e-mail which opined that the motion for leave had "strong legal merit."  Doc. Ent. 60-1 at 5.

On October 10, 2006, plaintiff filed a motion for sanctions pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1927 targeting defendant's motion for leave to file a counter and third party complaint.  (Doc. Ent. 53).  Plaintiff argues that defendant's motion for leave was "not warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law."  Doc. Ent. 53 at 6.

On October 24, 2006, defendant Nadair filed a response to plaintiff's motion.  (Doc. Ent. 57). Defendant argues that the motion should be dismissed to the extent it is based upon Rule 11, because plaintiff failed to comply with the "Safe Harbor" provision of the rule.  Furthermore, defendant argues that it was reasonable to believe that "the discovery rule should be applied to toll the applicable statues of limitation[.]"

On October 31, 2006, plaintiff filed a reply to defendant Nadair's response.  (Doc. Ent. 60).  On November 7, 2006, Judge O'Meara referred this motion to Magistrate Judge Capel. (Doc. Ent. 61).  However, on November 21, 2006, this case was reassigned from Magistrate Judge Capel to me.  (Doc. Ent. 62).

On January 4, 2007, I conducted a hearing on plaintiff's motion for sanctions.  Attorney Thomas R. Warnicke spoke on plaintiff's behalf and attorney Brian H. Rolfe spoke on defendant Nadair's behalf.  Following oral argument, I took the motion under advisement.

**E.      Under either Fed. R. Civ. P. 11 or 28 U.S.C. § 1927, plaintiff's motion for sanctions is denied.** [3]

---

[3]The Court also has an inherent sanctioning authority.  "The inherent authority of the Court is an independent basis for sanctioning bad faith conduct in litigation."  *First Bank of Marietta v.*

4

1.    **The parties dispute the date on which defendant Nadair knew about August 29, 2001 "smoking gun" Home Depot memorandum.**

On or about June 21, 2001, Bob Desjardins (of Nadair) faxed a letter to Jeff Vander Ark (of Paragon Marketing Group) regarding in store service of the Great Lakes area.  In part, that letter noted that the payment of servicing commission would be paid to plaintiff directly from the head office.  Doc. Entries 60-1 at 3, 55-15.

On or about August 29, 2001, Vander Ark faxed a letter to Kevin Cody (a representative of Home Depot)[4] regarding Nadair.  Doc. Ent. 53 at 9, Doc. Ent. 57-1 at 17, Doc. Ent. 57-6.  This letter stated:

> Per your request of my partner, Brad Marthens, the following letter will confirm to you that we have not been paid by Nadair for over six months.  I am in no way asking you to get involved, I only want you to be aware that we [cannot] set or service for a manufacturer that will not pay.  This obviously affects your stores, as they will need to set the product themselves.  We are informing the stores of the problem as we visit them.

---

*Hartford Underwriters Insurance Co.*, 307 F.3d 501 (6th Cir. 2002) (referencing *Chambers v. NASCO*, Inc., 501 U.S. 32 (1991)).  "[A] court's reliance upon its inherent authority to sanction derives from its equitable power to control the litigants before it and to guarantee the integrity of the court and its proceedings."  *First Bank of Marietta*, 307 F.3d. at 512 (citing *Chambers*, 501 U.S. at 43).  "*Chambers* does not explicitly require in every instance that a district court first determine whether the conduct could be sanctioned under the rules or relevant statutes before considering sanctions under its inherent authority."  *Id.*  "In our view, *Chambers* should be read broadly to permit the district court to resort to its inherent authority to sanction bad-faith conduct, even if the court has not expressly considered whether such conduct could be sanctioned under all potentially applicable rules or statutes."  *Id.* at 514.  "As a practical matter, the district court should usually inform the parties, as did the district judge here, that the district court is considering using its inherent authority to sanction particular conduct."  *Id.* at 516.  "A district court has the inherent power to sanction a party when that party exhibits bad faith, including the party's refusal to comply with the court's orders."  *Youn v. Track, Inc.*, 324 F.3d 409, 420 (6th Cir. 2003) (citing cases).

Although this is a potential basis for an award of sanctions, I choose not to invoke it at this time.

[4]Doc. Ent. 46-1 at 5.

5

Doc. Ent. 57-6 (Exhibit D).  Defendant Nadair characterizes this as the "smoking gun" memo.  Doc. Ent. 57-1 at 14.

On the same date, Vander Ark faxed a letter to Desjardins and Candice Kaiser of PCS (with copies to Jeff Lee [of Home Depot],[5] Cody, and Marthens) regarding store sets / service.  In part, that letter states: "[a]s of today, we have still not been paid for the following months (months check is due):  January, February, March, April, May, June.  We were paid our July check by PCS."  Doc. Ent. 57-7 (Exhibit E).

In Fall 2001, Lee told Marc Lupien (Nadair's President)[6] that he (Lee) had been advised that Nadair was not paying a servicing agent.  Doc. Entries 48-1 at 11.[7]  Subsequently, Lupien looked into the situation by speaking with Kaiser - a conversation that Lupien testified probably referred to Paragon.  Doc. Entries 48-1 at 11, 48-5 at 2-3 (8/29/06 Lupien dep.).

Desjardins has testified that Nadair "voluntarily and upon [his] recommendation decided to stop doing business with Home Depot, because they were running our - they wanted to run our business, Nadair's business.  And I said absolutely not."  Desjardins also stated that "that's the reason why we're no longer there.  Actually we are still there.  I mean, we are selling to the distributor and they're selling to them."  Doc. Entries 48-1 at 12, 48-9 at 5-6 (12/06/04 Desjardins dep.).

---

[5]Doc. Ent. 48-1 at 11.

[6]Doc. Ent. 48-1 at 6.

[7]*See also* Doc. Ent. 46-3 at 3 ¶¶ 7-8 (Ex. 1 to Def.'s Mtn. for Leave) (Lupien's September 7, 2006 representation that during his Fall 2001 meeting (in Atlanta, Georgia) with Home Depot representatives, Lupien "was informed by the Home Depot that it would no longer allow Nadair to place its product in its stores to the extent it had in the past because 'Nadair is not paying [its] service representative.'").

Defendant Nadair was first served with the instant lawsuit in March 2004.  Doc. Ent. 57-1 at 13.  On May 19, 2006, defendant was provided with the "smoking gun" Home Depot memo. Ent. 60-1 at 2.

On August 28, 2006, defendant Nadair (Lupien) discovered for the first time that plaintiff had falsely told Home Depot that defendant Nadair was not paying plaintiff commissions when the "smoking gun" memo was reviewed one day before defendant Nadair's (August 29, 2006) deposition.  Doc. Ent. 57-1 at 7, 14; Doc. Ent. 46-3 at 4 ¶ 17 (Ex. 1 to Def.'s Mtn. for Leave). Upon reviewing the "smoking gun" memo, Lupien informed his attorney "for the first time that Nadair wanted to sue Paragon, Marthens and Vander Ark[,] for their wrongful and defamatory and false statements to The Home Depot which resulted in [Nadair] losing The Home Depot account."  Doc. Ent. 46-3 at 4 ¶ 20.

**2.      Nonetheless, plaintiff's motion for sanctions is denied to the extent it is based upon Fed. R. Civ. P. 11.  Plaintiff did not comply with Rule 11(c)(1)(A).**

With regard to how a motion for Rule 11 sanctions is initiated, the rule provides in part:

> A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.  If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion.  Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

Fed. R. Civ. P. 11(c)(1)(A).

Plaintiff admits that its motion for sanctions "was not served twenty-one days before its filing with the Court."  Doc. Ent. 60-1 at 5.  Citing *Morganroth & Morganroth v. DeLorean*, 123

7

F.3d 374, 384 (6th Cir. 1997),[8] plaintiff argues that "it is clear that the 'safe harbor provision' is designed to 'put the filing lawyer on notice that he or she may be sanctioned and to give the filing lawyer an opportunity to reconsider.'"  Plaintiff argues that its October 9, 2006 e-mail accomplished this goal.  Doc. Ent. 60-1 at 6.

"In this circuit the test for imposition of Rule 11 sanctions is whether the attorney's conduct was reasonable under the circumstances." *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997) (citing *Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 958 (6th Cir. 1990), *cert. denied*, *Sloan v. G & G Mfg. Inc.*, 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990)). *Blachy v. Butcher*, 129 Fed. Appx. 173, 180 (6th Cir. 2005) (same).  With respect to Rule 11's "safe harbor" provision, the Sixth Circuit has stated: "a party seeking sanctions must follow a two-step process: first, serve the Rule 11 motion on the opposing party for a designated period (at least twenty-one days); and then file the motion with the court." *Ridder*, 109 F.3d at 294. "'These provisions are intended to provide a type of 'safe harbor' against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation···· [T]he timely withdrawal of a contention will protect a party against a motion for sanctions.'" *Ridder*, 109 F.3d at 294 (citing Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendments)).  "[T]he offending party can avoid sanctions altogether by withdrawing or correcting the challenged document or position

---

[8] *Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 384 (6th Cir. 1997) ("Any claim subject to Rule 11 sanctions is so frivolous that a lawyer should know better than to file it. The safe harbor provision nevertheless requires opposing counsel to put the filing lawyer on notice that he or she may be sanctioned and to give the filing lawyer an opportunity to reconsider. Rule 11 does not distinguish degrees of frivolity.").

after receiving notice of the allegedly violative conduct." *Ridder*, 109 F.3d at 294. "[T]he 'safe harbor' provision works in conjunction with the duty of candor, giving the proponent of a questionable claim an opportunity to assess the claim's validity without immediate repercussion." *Id*. With regard to the timing of a Rule 11 motion, "[a] party must now serve a Rule 11 motion on the allegedly offending party at least twenty-one days prior to conclusion of the case or judicial rejection of the offending contention." *Ridder*, 109 F.3d at 295.

*Ridder* also discussed compliance with the safe harbor provision of Rule 11. "Rule 11 cases emerging in the wake of the 1993 amendments have found the 'safe harbor' provision to be an absolute requirement." *Ridder*, 109 F.3d at 296. *Cobleigh v. United States*, No. 97-2303, 1999 WL 195738 (6th Cir. 1999) (unpublished) (citing *Ridder*, 109 F.3d at 296). "The plain language of Rule 11 specifies that unless a movant has complied with the twenty-one day 'safe harbor' service, the motion for sanctions 'shall not be filed with or presented to the court.'" *Ridder*, 109 F.3d at 296 (citing Fed. R. Civ. P. 11(c)(1)(A). "A party seeking sanctions must leave sufficient opportunity for the opposing party to choose whether to withdraw or cure the offense voluntarily before the court disposes of the challenged contention." *Ridder*, 109 F.3d at 297. "[S]anctions under Rule 11 are unavailable unless the motion for sanctions is served on the opposing party for the full twenty-one day 'safe harbor' period before it is filed with or presented to the court; this service and filing must occur prior to final judgment or judicial rejection of the offending contention." *Ridder*, 109 F.3d at 297.

In light of *Ridder*'s direction that compliance with the safe harbor provision of Fed. R. Civ. P. 11 is an absolute requirement, and in light of plaintiff's admission that it did not comply with this portion of Rule 11 (Doc. Ent. 60 at 5), plaintiff's motion for sanctions is denied to the

extent it is based upon Fed. R. Civ. P. 11.  Plaintiff did not comply with the letter of Rule

11(c)(1)(A).  Although it may be the case that plaintiff's October 9, 2006 e-mail comported with

the spirit of Rule 11's safe harbor provision by giving defendant an opportunity to withdraw the

allegedly offending September 7, 2006 motion before Magistrate Judge Capel's October 16,

2006 ruling,[9] I conclude that *Ridder* does not support an argument that substantial compliance

with Rule 11(c)(1)(A) is adequate.[10]

---

[9]At the time of plaintiff's October 9, 2006 e-mail, defendant had not yet filed its reply to its motion for leave.  On October 10, 2006, three things happened: (1) defendant sent an e-mail to plaintiff; (2) defendant filed a reply to its motion for leave; and (3) plaintiff filed the instant motion for sanctions.  Here, a ruling on the motion at issue took place on October 16, 2006 and the resulting order was entered on October 19, 2006.  Plaintiff has represented that, in light of the scheduled October 16, 2006 hearing on defendant's motion for leave, "compliance with the safe harbor provision would have required [p]laintiff to serve its motion for sanctions before [d]efendant had any opportunity to reply to [p]laintiff's response to [d]efendant's Motion for Leave."  Plaintiff explains that it wanted to permit defendant to review plaintiff's September 21, 2006 response and to file a reply before plaintiff decided whether to seek sanctions.  Doc. Ent. 60 at 6.

In *Ridder*, with respect to the timing of a Rule 11 motion, the Sixth Circuit characterized the Advisory Committee Notes for the 1993 Amendments as advising "early action[.]" *Ridder*, 109 F.3d at 295.  The Court noted that "a party cannot wait to seek sanctions until after the contention has been judicially disposed." *Id.* at 295.  Furthermore, "[i]f the court disposes of the offending contention before the twenty-one day 'safe harbor' period expires, a motion for sanctions cannot be filed with or presented to the court." *Id.* at 295.  With respect to defendant's Rule 11 motion, the Sixth Circuit noted that "the magistrate judge found . . . that the 'safe harbor' provision is rendered a mere 'empty formality' when a motion for sanctions comes after summary judgment has been granted." *Id.* at 296.  The Court held that defendant had "given up the opportunity to receive an award of Rule 11 sanctions . . . by waiting to file the motion until after the entry of summary judgment." *Id.* at 297.

[10]Substantial compliance may be adequate elsewhere.  For example, at least two courts have stated:  "We could conclude that [defendant was] in substantial compliance with Rule 11; or we could find that it was impossible for [him] to comply with Rule 11; or we could determine that [plaintiff] waived [his] right to a 21-day safe harbor." *Kathrein v. Siegel*, No. 05 C 1718, 2006 WL 1371459, *4 (N. D. Ill. May 16, 2006) (slip copy); *Methode Electronics, Inc. v. Adam Technologies, Inc.*, 371 F.3d 923, 927 (7th Cir. 2004) (same).  In fact, *Methode* stated:  "Even though there may be a basis in this case for finding substantial compliance with the rule, or that [plaintiff] waived its rights to the 21-day safe-harbor provision, we will not decide those issues." *Methode Electronics, Inc.*, 371 F.3d at 927.

**3.      Furthermore, plaintiff's motion for sanctions is denied to the extent it is based upon 28 U.S.C. § 1927.  Defendant's or its counsel's actions did not unreasonably and vexatiously multiply these proceedings.**

**a.**      "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.

"[T]he imposition of section 1927 sanctions against counsel 'does not require a finding of recklessness, subjective bad faith, or conscious impropriety; an attorney does not have carte blanche to burden the federal courts by pursuing claims that he should know are frivolous.'" *Smith v. Detroit Federation of Teachers Local 231, American Federation of Teachers, AFL-CIO*, 829 F.2d 1370, 1379 (6th Cir. 1987) (citing *Haynie v. Ross Gear Division of TRW, Inc.*, 799 F.2d 237, 243 (6th Cir.1986) (per curiam), *vacated as moot*, *Haynie v. Ross Gear Division of TRW, Inc.*, 482 U.S. 901, 107 S.Ct. 2475, 96 L.Ed.2d 368 (1987)).

"28 U.S.C. § 1927 authorizes a court to assess fees against an attorney for 'unreasonable and vexatious' multiplication of litigation despite the absence of any conscious impropriety.  An attorney's ethical obligation of zealous advocacy on behalf of his or her client does not amount to carte blanche to burden the federal courts by pursuing claims that are frivolous on the merits, or by pursuing nonfrivolous claims through the use of multiplicative litigation tactics that are harassing, dilatory, or otherwise 'unreasonable and vexatious.'  Accordingly, at least when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims, a trial court does not err by assessing fees attributable to such actions against the attorney." *Jones v. Continental*

11

*Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986).  "[S]imple inadvertence or negligence that frustrates

the trial judge will not support a sanction under section 1927.  There must be some conduct on

the part of the subject attorney that trial judges, applying the collective wisdom of their

experience on the bench, could agree falls short of the obligations owed by a member of the bar

to the court and which, as a result, causes additional expense to the opposing party."  *In re

Ruben*, 825 F.2d 977, 984 (6th Cir. 1987).

"In general, the burden of proof is on the party seeking the sanction."  *Phinney v.

Paulshock*, 181 F.R.D. 185, 197 (D.N.H. 1998).  This is true where sanctions are sought pursuant

to 28 U.S.C. § 1927.  *Cook v. American S.S. Co.*, 134 F.3d 771, 776 (6th Cir. 1998) ("On appeal

from orders imposing 28 U.S.C. § 1927 sanctions, the Court stated that 'the burden of proof has

not been shifted; the show cause order [which required the ultimately sanctioned attorney to state

why he should not be assessed 28 U.S.C. § 1927 costs, expenses and attorney fees] merely

facilitated the due process requirements; thus, this claim can be easily dismissed.'"); *Phinney v.

Paulshock*, 181 F.R.D. 185, 197 (D.N.H. 1998) (citing *Cook*, 134 F.3d at 776).

**b.**    According to plaintiff, "[d]efendant's alleged claims for Interference with Business

Relationships/Contracts and Defamation [were] absolutely barred by the applicable statutes of

limitations, and [d]efendant's alleged claim for Fraud/Negligent Misrepresentation d[id] not

even state the necessary elements for the proposed claim - nor c[ould] it possibly do so."  Doc.

Ent. 53 at 2 ¶ 3.  Plaintiff argues that each of the claims proposed by defendant September 7,

2006 motion is frivolous.  Doc. Ent. 53 at 8.  Defendant responds that there was a rational

argument that its proposed  counter and third-party claims were not barred by the statute of

limitations and there was a rational argument that its proposed counts stated a claim for relief.

12

Doc. Ent. 57-1 at 13.

(i)     With regard to the **interference with business relationships / contracts** claim, plaintiff alleges that under Michigan's three-year statute, running from the date of accrual, "this claim would have accrued for Defendant in the fall of 2004." Doc. Ent. 53 at 8.

Defendant contends that "the first time [d]efendant may have been aware of [p]laintiff's claim that [d]efendant owed it commissions was when it was served with this lawsuit–March 2004[,]" and argues that "there is certainly a rational argument that because this lawsuit was served less than three years ago, within the relevant statutes of limitations for filing the two tort claims, seeking leave to file those claims was rational, reasonable and certainly not sanctionable." Doc. Ent. 57-1 at 13. Defendant contends that "it was reasonable for [d]efendant to argue that [p]laintiff actively concealed the fact that it made direct statements to the Home Depot that Nadair was not paying it commissions[,]" based upon the two August 29, 2001 memoranda. Defendant also contends that "[i]t was rational and reasonable for [d]efendant to believe that a trier of fact could conclude that Paragon had told The Home Depot that Nadair had not paid it its commissions, but that it had kept this fact from Nadair[,]" based upon Lupien's September 7, 2006 representation that "[t]he fact that this statement was made was discovered by [Lupien] on August 28, 2006 when, in preparation for [his] deposition on August 29, 2006, [he] reviewed a memorandum from Jeff Vander Ark of Paragon to Kevin Cody (representative of The Home Depot)." Doc. Ent. 57-1 at 14; Doc. Ent. 46-3 at 4 ¶ 17.

Based upon this alleged concealment and Lupien's September 7, 2006 affidavit, defendant contends that "it was rational and reasonable for [d]efendant to conclude that its counter claims and third-party claims would not [be] time barred." Doc. Ent. 57-1 at 14.

13

Defendant points out that "the discovery rule is applied to prevent unjust results 'when a plaintiff would otherwise be denied a reasonable opportunity to bring suit because of the latent nature of the injury or the inability to discover the causal connection between the injury and the defendant's breach of duty owed to the plaintiff.'" *In re Jackson Nat. Life Ins. Co. Premium Litigation*, 107 F.Supp.2d 841, 857 (W. D. Mich. 2000) (quoting *Lemmerman v. Fealk*, 449 Mich. 56, 65-66, 534 N.W.2d 695 (1995)). Doc. Ent. 57-1 at 14-15. Defendant also notes that "[t]he purpose of the statute of limitations is to provide a plaintiff 'a reasonable opportunity to commence suit' and the discovery rule serves to avoid extinguishing the claim 'before the plaintiff is aware of the possible cause of action[.]'" *Boyle v. General Motors Corporation*, 250 Mich. App. 499, 502-503, 655 N.W.2d 233, 235 (2002) (quoting *Chase v. Sabin*, 445 Mich. 190, 95-196, 516 N.W.2d 60 (1994)). Doc. Ent. 57-1 at 15.

In reply, with regard to the statute of limitations, plaintiff contends that defendant received the "smoking gun" Home Depot memo on May 19, 2006 and that the discovery rule does not apply to defendant's proposed tort claims. Doc. Ent. 60 at 2. Furthermore, plaintiff points out, "[t]he tort [tortious interference with prospective business advantage] is complete upon a showing of the existence of a valid business relationship or the expectation of such a relationship between the plaintiff and some third party, knowledge of the relationship or expectation of the relationship by the defendant, and an intentional interference causing termination of the relationship or expectation which results in damages to the plaintiff[.] The cause of action accrues and the statute of limitations begins to run upon the simultaneous occurrence of each of the elements of the tort." *Lucy v. Amoco Oil Co.*, 582 F.Supp. 1168, 1173 (E. D. Mich. 1984) (internal citation omitted). Doc. Ent. 60 at 3. Plaintiff contends there was no

14

interference in this case, because Home Depot requested the "smoking gun" memo, it contained only facts, and Dejardins' June 21, 2001 memo stated that commission would be paid directly to plaintiff from the head office.  Doc. Ent. 60 at 3.

     **(ii)**     With regard to defendant's attempt to add a claim of **defamation**, plaintiff claims that the applicable statute of limitations is one year (Mich. Comp. Laws § 600.5805(9)) and notes that "[t]he period of limitations runs from the time the claim accrues which in the case of libel is from the time of publication even though the person defamed has no knowledge thereof until sometime afterwards." *Hawkins v. Justin*, 109 Mich.App. 743, 746, 311 N.W.2d 465, 466 (1981) (citations omitted).  Doc. Ent. 53 at 9; Doc. Ent. 60 at 3.  Plaintiff points out that the August 29, 2001 "smoking gun" Home Depot letter on which defendant's defamation claim is based was dated and sent more than five years ago.  Doc. Ent. 53 at 9.

     In response to plaintiff's reliance upon *Hawkins*, defendant states:  plaintiff "apparently ignores the fact that defamation is a tort subject to the discovery rule."  Doc. Ent. 57-1 at 17. Under *Hawkins*, plaintiff replies, defendant's argument "that the discovery rule applies here because it had no knowledge the memo was sent[,]" is frivolous.  Doc. Ent. 60 at 4.

     **(iii)**     With regard to the **fraudulent / negligent misrepresentation** claim, plaintiff argues that defendant cannot plead a prima facie case.  As plaintiff notes, "[t]he elements of fraud and actionable misrepresentation claims in Michigan are well settled. Plaintiffs must show:

> (1) That defendant made a material representation;
> (2) that it was false;
> (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion;
> (4) that he made it with the intention that it should be acted upon by plaintiff;
> (5) that plaintiff acted in reliance upon it; and
> (6) that he thereby suffered injury.

"Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery." *Tocco v. Tocco*, 2006 WL 1452107, *4 (E. D. Mich. Apr. 3, 2006) (citing *Hi-Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813 (1976)). Doc. Ent. 53 at 8. According to plaintiff, defendant's alleged liability is based upon "factually true statements that were made by [p]laintiff to a third party, *i.e.* Home Depot." Doc. Ent. 53 at 9. Furthermore, at the January 4, 2007 hearing, plaintiff's counsel argued that the statement was not made with the intention to induce forbearance nor was there reliance upon it.

Defendant argues that "it is generally recognized that fraud may be consummated by suppression of facts and of the truth, as well as by open false assertions, since a suppression of truth may amount to a suggestion of falsehood." Defendant points out that "[i]n order for the suppression of information to constitute silent fraud there must be a legal or equitable duty of disclosure." *U. S. Fidelity and Guaranty Co. v. Black*, 412 Mich. 99, 125, 313 N.W.2d 77, 88 (1981). Defendant contends that plaintiff made misrepresentations to Home Depot regarding defendant, did not disclose those representations to defendant, and had a duty to do so. Doc. Ent. 57-1 at 16. Furthermore, defendant contends that it "relied upon the fact that it believed Paragon was looking to PCS for commissions as relayed to The Home Depot in [p]laintiff's various correspondence and was damaged as a result." Doc. Ent. 57-1 at 16-17.

With respect to defendant's proposed fraud claim, plaintiff refers to *Boyle v. General Motors Corporation*, 468 Mich. 226, 661 N.W.2d 557 (2003), wherein the Supreme Court of Michigan reversed the lower court's judgment and stated, "M.C.L. § 600.5827 clearly applies and because prior decisions by this Court rejecting a discovery rule in fraud cases have never

16

been overruled." *Boyle*, 468 Mich. at 227, 661 N.W.2d at 558.  Plaintiff also claims that

defendant did not plead the required elements of a fraud/negligent misrepresentation claim in the

proposed counter and third party complaint.  Doc. Ent. 60 at 4.

Plaintiff also addresses defendant's assertion of "**fraudulent concealment**" in its

October 24, 2006 response to the instant motion.  Doc. Ent. 60 at 4.[11]  Plaintiff points out that

"[f]raudulent concealment means employment of artifice, planned to prevent inquiry or escape

investigation, and mislead or hinder acquirement of information disclosing a right of action. The

acts relied on must be of an affirmative character and fraudulent." *Doe v. Roman Catholic

Archbishop of Archdiocese of Detroit*, 264 Mich. App. 632, 642, 692 N.W.2d 398, 405 (2004)

(internal citations and quotations omitted).  Plaintiff claims that "[n]o such acts occurred in this

case, nor has [d]efendant alleged any such acts."  Doc. Ent. 60 at 4.

**c.**     Plaintiff's request for sanctions pursuant to 28 U.S.C. § 1927 is denied.  **First,** the instant

motion for sanctions was filed based upon defendant's motion for leave, but it is not clear that

Magistrate Judge Capel denied that motion on the basis that it was frivolous.  Magistrate Judge

Capel's October 19, 2006 order does not set forth the reasons for his decision to deny

defendant's motion to file counter and third party complaint.  Instead, the order succinctly refers

to the record of the hearing, and it does not appear that the tape of that hearing has been

transcribed.  Looking only to plaintiff's September 21, 2006 response brief, one could conclude

that defendant's motion was denied as futile.  In fact, it was mentioned during the January 4,

2007 hearing on the motion for sanctions that Magistrate Judge Capel had ruled that the

_____

[11]Plaintiff contends that "[d]efendant never briefed this claim, or set forth any of its
elements."  Doc. Ent. 60 at 4.  At the January 4, 2006 hearing, plaintiff's counsel considered this
a different argument than the one made before Magistrate Judge Capel.

17

proposed amendment would be futile on the basis of the statute of limitations.  However, even if

Magistrate Judge Capel's conclusion was that the relief sought by defendant's motion was futile

on this basis, such a conclusion is not the same as saying that defendant's motion was frivolous.

As at least one court has noted, "Section 1927 requires a sanctioning court to do more than

disagree with a party's legal analysis; the court must make a separate determination on both the

issue of the reasonableness of the claims and the purpose for which suit was instituted."  *F.D.I.C.*

*v. Calhoun*, 34 F.3d 1291, 1300 (5th Cir. 1994).

**Second,** I am not persuaded that the allegedly offending motion - defendant's motion for

leave - was an unreasonable and vexatious multiplication of this lawsuit.  Defense counsel was

persuasive in his oral argument that the motion was not filed for an improper purpose.  As

discussed above, there is a dispute as to the timing of defendant's knowledge of the "smoking

gun" Home Depot memo (May 19, 2006 v. August 28, 2006), as well as the date when defendant

should have known about its proposed claims (Fall 2001 v. August 28, 2006).  Also, in light of

Desjardins' June 21, 2001 letter, there seems to be a dispute about the veracity of plaintiff's

statement in the August 29, 2001 "smoking gun" Home Depot memo.  Furthermore, the Court

acknowledges plaintiff's counsel's representation that his co-counsel was the receiver of

threatening remarks from defendant's principal(s) regarding an intent to multiply this litigation -

an allegation that, if true, would support plaintiff's claim that defendant's motion for leave was

filed vexatiously.  However, during oral argument, defense counsel denied that attorney Mack

had been accosted by his client.  Furthermore, defense counsel represented to the Court that he

believed there was a claim.

**Third,** a decision to deny 28 U.S.C. § 1927 sanctions in this case is supported by case

18

law.  To begin, in plaintiff's discussion of Rule 11 and Section 1927 sanctions, it relies upon two

unpublished cases - *Blachy v. Butcher*, 129 Fed. Appx. 173, 180 (6th Cir. 2005) and *Newton v.*

*Georgia-Pacific Corporation*, Case No. 86-CV-40480-FL (E. D. Mich. Nov. 18, 1987)

(Newblatt, J.).[12]  Defendant argues that *Blachy* is "significantly and distinctly different" from the

case at bar and that *Newton* is distinguishable, because "the party being sanctioned had pursued a

claim directly contradictory to a Michigan Supreme Court ruling[.]" Doc. Ent. 57-1 at 15-16.

I agree.  In *Blachy*, with respect to the district court's award of sanctions under 28 U.S.C.

§ 1927, the Sixth Circuit stated:  "As the foregoing section of this opinion attests, Rosemary's

Rule 60(b) motion was objectively meritless. Its untimeliness and baselessness were obvious.

Similarly, there can be no doubt that the Appellants' litigation strategy vexatiously and

unreasonably multiplied these proceedings. From the time this case entered the federal court

system in 1991 through the present date, Rosemary has not obtained a single successful

judgment. She and her counsel, Robert Butcher, have contested issues they had no business

contesting and, in the course of their conduct, earned the sanctions the district court imposed

under Rule 11 and § 1927 ."  *Blachy*, 129 Fed. Appx. at 181.  *Blachy* noted the lack of a

successful judgment in more than ten years.  *Blachy*, 129 Fed. Appx. at 181.  The instant lawsuit

was filed in January 2003 and the particular conduct about which plaintiff complains and based

upon which it seeks sanctions is defendant's motion for leave filed September 7, 2006.  Not only

is the span of time at issue far less, but, for the reasons discussed below, I am not convinced that

the filing of the allegedly offending motion evidences a "litigation strategy vexatiously and

---

[12]I decline to grant defendant's request that the instant motion be stricken and dismissed
on the basis that plaintiff did not attach copies of these unpublished decisions as required by ¶ 3C
in the Court's November 30, 2005 scheduling order.  Doc. Ent. 57-1 at 10.

unreasonably multipl[ying] these proceedings." *Blachy*, 129 Fed. Appx. at 181.

In *Newton*,[13] Judge Newblatt of this Court observed that the issue in a § 1927 request for

sanctions "now turns on whether plaintiff's theory of liability was so obviously precluded by

existing precedent that the attorney advocating the theory should have known that the claim was

frivolous." *Newton* (citing *Smith*). Doc. Ent. 57-9 at 3. Judge Newblatt concluded that "[i]t is

clear beyond peradventure . . . that sanctions should be imposed against plaintiff for prosecuting

this frivolous and vexatious lawsuit." Judge Newblatt noted that "good faith is no longer a

defense against sanctions in this judicial circuit, neither under § 1927 nor under Rule 11." He

stated that plaintiff's counsel's "theory is not, and never has been during the pendency of this

litigation, supportable in existing law." Doc. Ent. 57-9 at 9. Before considering defendant's

accounting of fees, Judge Newblatt concluded: "[p]laintiff's counsel ha[d] consistently failed to

---

[13]"§ 1927 and Rule 11 are similar in one respect: they both turn on the state of the law at any given time during the pendency of the litigation, and whether counsel should have been expected to know that the existing law provided no initial, or further, chance of success. Accordingly, the first issue under both § 1927 and Rule 11 is the legitimacy of plaintiff's claim under the law as it existed at the relevant time." *Newton*. Doc. Ent. 57-9 at 4.

*Newton* acknowledges that the Supreme Court of Michigan's decision in *Carr v. General Motors Corp.*, 425 Mich. 313, 389 N.W.2d 686 (July 8, 1986) was decided one month before Newton filed her lawsuit. Doc. Ent. 57-9 at 4-5. In *Carr*, the Supreme Court of Michigan considered "whether a disability that is related to one's ability to perform the duties of a particular position is a 'handicap' within the meaning of the Handicappers' Civil Rights Act, (HCRA), M.C.L. § 37.1101 et seq.; M.S.A. § 3.550(101) et seq." *Carr*, 425 Mich. at 315, 389 N.W.2d at 687. The Court found that "the clear legislative intent was that only those whose disability is unrelated to ability to perform the job be covered by the HCRA[.]" *Carr*, 425 Mich. at 315-316, 389 N.W.2d 686.

Judge Newblatt determined that plaintiff's counsel "ha[d] prosecuted [the] lawsuit on a misreading of *Carr* and related other caselaw." Doc. Ent. 57-9 at 5. He further determined that "[a] reasonable reading of *Rancour [v. Detroit Edison Co.*, 150 Mich. App. 276, 388 N.W.2d 336 (Apr. 7, 1986)] would have demonstrated that it did not hold that which plaintiff's counsel repeatedly has urged here: that an employer must accommodate a handicap if the disability impinges only peripherally on a person's job performance." Doc. Ent. 57-9 at 6. He also found plaintiff's factual case defective. Doc. Ent. 57-9 at 7.

ensure that the lawsuit was grounded in fact and warranted in law.  He is, therefore, liable for sanctions under both § 1927 and Rule 11." *Newton*.  Doc. Ent. 57-9 at 10.  Here, as defense counsel represented at oral argument, he believed defendant had a claim.  While good faith is no longer a defense, I conclude that counsel acted reasonably in presenting defendant's motion for leave to the court.  In this regard, it is telling that defense counsel presented his argument and has rested with Magistrate Judge Capel's decision.

Furthermore, I am not convinced that defendant's basis for bringing its motion for leave was unreasonable to the extent it relied upon the discovery rule.  Plaintiff claims that "[d]efendant has never provided this Court, or [p]laintiff's counsel, with *any* authority establishing that the particular claims [d]efendant sought to bring *were* subject to the discovery rule[,]"and that "all the case law discussing when these claims accrue clearly indicate the discovery rule is not applicable."  Doc. Ent. 60 at 2-3.  Defendant's September 7, 2006 motion for leave argued that defendant "was not aware of any claims it had against Paragon, Marthens, or Vander Ark until certain facts were revealed during discovery."  Doc. Ent. 46-1 at 7.  In its discussion of Rule 13(f), defendant argued that "the discovery of new facts upon which a counterclaim could be based has been deemed as a sufficient excuse for the failure to assert those claims in the earlier pleadings."  Doc. Ent. 46 at 6-7 (citing *2001 Inc. v. Novaglas, Corp.*, 60 F.R.D. 649 (E. D. N. Y. 1973)).  In its September 21, 2006 response to defendant's motion for leave, plaintiff cited *Hawkins* in support of plaintiff's argument that defendant's proposed claim of defamation was futile and frivolous.  Doc. Ent. 48-1 at 17.  In its October 10, 2006 reply, defendant replied that "defamation is a tort subject to the discovery rule."  Doc. Ent. 52-1 at 6. While I am cognizant of plaintiff's argument that defendant's argument is not consistent with

21

*Hawkins*, Doc. Ent. 60 at 4, I conclude that defendant's argument that the discovery rule applied did not unreasonably or vexatiously multiply the proceedings.  At the hearing on the instant motion, defense counsel argued that *Hawkins* does not address fraud.

Plaintiff argues that "[i]n the present case, even a superficial inquiry into the statute of limitations for [d]efendant's proposed claims, or the necessary, black-letter-law elements of the claims, reveals that the claims lack legal merit and are absolutely barred."  Doc. Ent. 53 at 8.  Furthermore, plaintiff argues that "there is no question that a reasonable inquiry was not conducted to see if the claims could even be brought at this time."  Doc. Ent. 53 at 10.  "[T]he mere finding that an attorney failed to undertake a reasonable inquiry into the basis for a claim does not automatically imply that the proceedings were intentionally or unreasonably multiplied."  *Ridder*, 109 F.3d at 298 (concluding that plaintiff's counsel "should be liable for excess costs resulting from his initial filing and persistent assertion of meritless claims, conduct that amounted to unreasonable and vexatious multiplication of the proceedings.").

Upon consideration, I conclude that the instant case is more like those cases in which 28 U.S.C. § 1927 sanctions have not been assessed.  For example, *Smith* was a lawsuit filed by nonunion, tenured teachers against the Detroit Board of Education and the Detroit Federation of Teachers (DFT).  On appeal from a portion of a district court order rejecting a magistrate judge's recommendation that attorney fees be awarded to DFT after the unsuccessful civil rights lawsuit against it, the Sixth Circuit held in part that "the district court did not abuse its discretion in declining to assess Smith's counsel for DFT's attorney's fees."  *Smith*, 829 F.2d at 1372.  "Although [plaintiff's] suit against [defendant] was ultimately found to lack merit, its theory of liability was not so obviously precluded by existing precedent that the attorney should have

22

known that the claim was frivolous.  In addition, there is no evidence that Smith's attorney pursued the plaintiffs' suit through the use of multiplicative litigation tactics that were harassing, dilatory, or otherwise 'unreasonable and vexatious.'"  *Smith*, 829 F.2d at 1379.

Moreover, in *Freeman*, the Seventh Circuit considered "an issue of first impression in this circuit: whether a union's duty of fair representation extends to its decision not to ask a court to vacate an arbitrator's award."  *Freeman v. Local Union No. 135, Chauffeurs, Teamsters, Warehousemen and Helpers*, 746 F.2d 1316, 1318 (7th Cir. 1984).  The Court concluded that "in the circumstances of this case there was no such duty and, as a result, affirm[ed] the district court's dismissal of the complaint."  *Freeman*, 746 F.2d at 1318.  The Court affirmed the lower court's order dismissing the complaint as filed outside of the statute of limitations, then noted "[t]here is no basis for the [defendant]'s request that this court impose attorneys' fees and costs against [plaintiff], pursuant to Fed.R.App.P. 38 and 28 U.S.C. § 1927, for filing a frivolous appeal.  As we stated at the outset, this case presents an issue not decided previously in this circuit.  Although it is true that plaintiff cited no cases in support of his contention that the union had a duty to appeal the grievance committee's decision, his position on the issue is not unreasonable.  Moreover, there is no indication of subjective bad faith on the part of plaintiff's attorney."  *Freeman v. Local Union No. 135, Chauffeurs, Teamsters, Warehousemen and Helpers*, 746 F.2d 1316, 1322 n.13 (7th Cir. 1984) (affirming the district court's order dismissing complaint for failure to file within the statute of limitations and not imposing attorney fee as it was an issue of first impression in the circuit, plaintiff's position was not unreasonable, and there was no indication that plaintiff's counsel acted in bad faith).

Also, during the hearing, defense counsel brought to the Court's attention *Moross Ltd.*

23

*Partnership v. Fleckenstein Capital, Inc.*, 466 F.3d 508 (6th Cir. Oct. 24, 2006) - a published

Sixth Circuit case decided on the date defendant filed its response brief to the instant motion.

*Moross* arose from plaintiff's investment in a private investment fund, and the lawsuit "alleged

violations of Michigan's Uniform Securities Act (MUSA), fraud, and breach of fiduciary duty."

*Moross Ltd. Partnership*, 466 F.3d at 510.  The lower court granted summary judgment to

defendants but denied defendants' Rule 11 and 28 § 1927 motion for sanctions.  *Id.*  With respect

to the Court's review of the sanctions sought below, the Sixth Circuit noted that "[s]anctions are

awarded where an attorney pursues claims that he should know are 'frivolous.'"  *Moross Ltd.*

*Partnership v. Fleckenstein Capital, Inc.*, 466 F.3d 508, 520 (6th Cir. Oct. 24, 2006) (citing

*Tareco Props., Inc. v. Morriss*, 321 F.3d 545, 550 (6th Cir.2003)).  As to Rule 11 and § 1927

sanctions, the Sixth Circuit concluded:  "[i]n this case, [plaintiff] provided the expert testimony

of Paul Moulden in order to demonstrate circumstantially that [defendant] did not allocate trades

to either his own account or the RTM Fund until he had forecasted their likelihood of

profitability.  The $221,500 voluntary transfer on the part of [defendant], moreover, can be seen

as raising at least an inference of consciousness of guilt.  We therefore find that the district court

did not abuse its discretion in denying the defendants' motion for sanctions."  *Moross Ltd.*

*Partnership*, 466 F.3d at 520.

  For the foregoing reasons, I am not convinced that defendant's motion for leave was

submitted for an improper purpose, as plaintiff suggests, nor am I convinced defendant Nadair

and its counsel's actions "are inexplicable, and warrant appropriate sanctions."  Doc. Ent. 53 at

9-10.  Likewise, I am not convinced that defendant multiplied the proceedings unreasonably and

vexatiously; therefore, plaintiff's request for sanctions is denied.

24

**II.      ORDER**

In accordance with the foregoing opinion, plaintiff's October 10, 2006 motion for

sanctions pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1927 (Doc. Ent. 53) is DENIED.

IT IS SO ORDERED.

The attention of the parties is drawn to FED. R. CIV. P. 72(a), which provides a period of

ten days from the date of service of this Order within which to file any written appeal to the

District Judge as may be permissible under 28 U.S.C. § 636(b)(1).


s/Paul J. Komives_____
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 1/12/07

The undersigned certifies that a copy of the foregoing
order was served on the attorneys of record by electronic
means or U.S. Mail on January 12, 2007.

s/Eddrey Butts_____
Case Manager

25